UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

ANTOINETTE S.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

21-CV-00106-LJV
DECISION & ORDER

───────────────────────────────

On January 21, 2021, the plaintiff, Antoinette S. ("Antoinette"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was no longer disabled.[2] *Id.* On December 9, 2021, Antoinette moved for judgment on the pleadings, Docket Item 7; on May 6, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 8; and on June 7, 2022, Antoinette replied, Docket Item 9.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Antoinette was receiving Supplemental Security Income ("SSI"). SSI is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both Disability Insurance Benefits ("DIB") and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Antoinette's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

2

## DISCUSSION

### I.  ALLEGATIONS

Antoinette argues that the ALJ erred in three ways.  See Docket Item 7-1.  First, she argues that the ALJ's "finding of medical improvement as of October 4, 2017, was not supported by substantial evidence." Id. at 10-14.  Second, she argues that the ALJ improperly "rejected all of the opinion evidence of record and assessed a highly specific RFC based on his own lay opinion, rather than substantial evidence." Id. at 14-25.  Third, she argues that the ALJ's step five determination was unsupported by substantial evidence because the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles. Id. at 25-28.  This Court agrees that the ALJ erred and, because that error was to Antoinette's prejudice, remands the matter to the Commissioner.

### II.  ANALYSIS

The Social Security Administration has a statutory duty to conduct periodic reviews to ensure continuing eligibility for individuals previously found disabled and awarded benefits.  See 42 U.S.C. §§ 421(i)(1), 425(a); 20 C.F.R. § 416.989.  The Commissioner "may terminate benefits to a person previously adjudged to be disabled only upon substantial evidence that the individual's condition has improved to the point that he or she is no longer disabled, or that the initial finding of disability was erroneous." De Leon v. Sec. of Health & Hum. Servs., 734 F.2d 930, 936 (2d Cir. 1984).  This "medical improvement" standard is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be

disabled." 20 C.F.R. § 416.994(b)(1)(i). The determination of medical improvement, however, must be "based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the claimant's] impairments." *Id.*; *see Veino v. Barnhart*, 312 F.3d 578, 586-87 (2d Cir. 2002).

The most recent decision finding that Antoinette was disabled was issued on December 30, 2013. *See* Docket Item 6 at 20. More specifically, that decision found Antoinette to be disabled because her chronic liver disease met the requirements of listing 5.05B in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* That listing "requires evidence of ascites or hydrothorax not attributable to other causes, despite continuing treatment as prescribed, present on at least two evaluations at least 60 days apart within a consecutive six-month period." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 5.05B. Each evaluation must be documented by either paracentesis or thoracentesis or appropriate medically acceptable imaging or physical examination and one of the following: serum albumin of 3.0 g/dL or less or International Normalized Ratio ("INR") of at least 1.5. *See id.*

On October 4, 2017, the Commissioner found that Antoinette was no longer disabled and terminated her benefits. *See* Docket Item 6 at 94-114. Upon review, the ALJ reached the same conclusion, finding that Antoinette's chronic liver disease with Laënnec's cirrhosis[4] did not meet or medically equal listing 5.05B or any of the other five options under listing 5.05. *Id.* at 21-23. In support of that decision, the ALJ

---

[4] Laënnec's cirrhosis is "a name given to cirrhosis with features typical of cirrhosis caused by chronic, heavy alcohol consumption." Daniel Yetman and Angelica Balingit, M.D., *Overview of Laënnec's Cirrhosis*, Healthline (Apr. 12, 2023), https://www.healthline.com/health/laennecs-cirrhosis.

concluded that Antoinette's chronic liver disease had improved medically.  *Id.* at 24-25.  But in reaching that conclusion, the ALJ did not compare records of Antoinette's current condition to records of her condition when she last was determined to be disabled; in fact, the ALJ did not even have the latter set of records.  *Compare id.* at 34-38 (listing record exhibits before the ALJ) *with id.* at 96-98 (listing exhibits, not in the record here, that were before the Commissioner on October 4, 2017). [5]

Antoinette argues that the ALJ could not make the medical improvement assessment without the records that led to the December 2013 determination.  *See* Docket Item 7-1 at 13.  Stated another way, Antoinette says that an ALJ cannot find medical improvement unless the ALJ compares records of a claimant's current condition with records of her condition at the time she was found to be disabled.  Because the December 2013 determination and the evidence supporting it were not part of the record before the ALJ, Antoinette reasons that the ALJ erred in finding that her condition improved.  *See* Docket Item 7-1 at 13-14.  And at least in the Second Circuit, Antoinette is correct.  *See Hathaway v. Berryhill*, 687 F. App'x 81, 83 (2d Cir. 2017) ("To make [the medical improvement assessment], the Commissioner *must examine the medical evidence that existed at the time of the initial disability determination and compare it to the new medical evidence*, and submit both sets of medical evidence to this Court." (emphasis added) (citing *Veino*, 312 F.3d at 587)); *see also* 20 C.F.R. § 416.994(b)(2)(i) ("Medical improvement . . . is determined by a *comparison of prior and current medical evidence* . . . ." (emphasis added)).

---

[5] This evidence apparently was before the Commissioner at the time Antionette's benefits were initially terminated on October 4, 2017.  It was not, however, in the record before the ALJ, and it is not in the record before this Court.

5

The ALJ relied on his conclusion that Antoinette no longer met the criteria of listing 5.05B to find that her condition must have improved.  But that conflates two separate inquiries, and the fact that Antoinette's chronic liver disease may no longer meet a particular listing is alone insufficient to establish her medical improvement.  *See Veino*, 312 F.3d at 587 ("The Commissioner argues . . . that the simple facts that Veino once qualified for a particular impairment in the Listing of Impairments[,] . . . and that he is now found not to qualify for that Listing, proves his medical improvement.  We disagree.").

An ALJ follows a seven-step process to determine whether a claimant who is receiving benefits is still disabled and entitled to benefits.  *See* 20 C.F.R. § 416.994(b)(5).  At the first step, the ALJ decides whether a claimant's impairments meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, *id.* § 416.994(b)(5)(i); at the second step the ALJ decides whether the claimant's impairments have undergone medical improvement, *id.* § 416.994(b)(5)(ii).  Those are two separate inquiries, and the latter inquiry can be completed only by comparing current medical records with those from when the claimant was disabled.  *See Veino*, 312 F.3d at 587.  Because the ALJ did not make that comparison—indeed, because the ALJ did not even have one set of records necessary to make the comparison—remand is required.

In sum, because the December 2013 determination and the evidence supporting that determination were not part of the record before the ALJ and are not in the record before this Court, "the administrative record lacks a foundation for a reasoned assessment of whether there is substantial evidence to support the Commissioner's

finding that [Antoinette's current] condition represents an improvement." *Veino*, 312 F.3d at 587.  Remand therefore is necessary so that the ALJ may supplement the record and properly perform the comparative analysis necessary to determine medical improvement.[6]

### CONCLUSION

The Commissioner's motion for judgment on the pleadings, Docket Item 8, is DENIED, and Antoinette's motion for judgment on the pleadings, Docket Item 7, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.


SO ORDERED.

Dated: May 22, 2023
       Buffalo, New York


                                                    */s/ Lawrence J. Vilardo*
                                                    LAWRENCE J. VILARDO
                                                    UNITED STATES DISTRICT JUDGE

---

[6] This Court "will not reach the remaining issues raised by [Antoinette] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103-04 (W.D.N.Y. 2020).